# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

BARBARAH J. MCPHERSON,

                Plaintiff,

v.                                  CIVIL ACTION NO.  5:07-cv-00367

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.

### MEMORANDUM OPINION

This is an action seeking review of the final decision of the Commissioner of Social Security (Commissioner) denying Barbarah J. McPherson's (Plaintiff) application for Disability Insurance Benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401–433, 1381–1383f. This action was referred to the Honorable R. Clarke VanDervort, United States Magistrate Judge, for submission to this Court of proposed findings of fact and a recommendation for disposition (PF&R) pursuant to 28 U.S.C. § 636(b)(1)(B).  On August 29, 2008, the magistrate judge submitted proposed findings of fact and recommended that the Court deny Plaintiff's Motion for Judgment on the Pleadings or in the Alternative for Remand [Docket 15], grant Defendant's Motion for Judgment on the Pleadings [Docket 21], affirm the final decision of the Commissioner, and dismiss this action from the Court's docket.  Objections to the PF&R were due by September 15, 2008.  Plaintiff filed a Motion for Extension of Time to File Objection [Docket 23] on September 11, 2008.  This motion was granted, and the time to file objections was extended to September 25, 2008.  On September 25, 2008, a second Motion for Extension of Time to File Objection [Docket 25] was filed.  The Court

granted this motion and gave Plaintiff until October 5, 2008, to file objections.  Timely objections

to the PF&R were filed on October 5, 2008.  The briefing is complete, and the matter is now ripe

for the Court's consideration.

Pursuant to Fed. R. Civ. P. 72(b), the Court must "make a de novo determination upon the

record . . . of any portion of the magistrate judge's disposition to which specific written objection

has been made."  However, the Court is not required to review, under a de novo or any other

standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings

or recommendation to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 149–50

(1985).  The Court has reviewed de novo those portions of the Magistrate Judge's PF&R to which

Plaintiff has properly objected and finds that the objections lack merit.  For the reasons set forth

below,  the Court **ADOPTS** and incorporates herein Magistrate Judge VanDervort's PF&R.  The

Court **DENIES** Plaintiff's Motion for Judgment on the Pleadings [Docket 15], **GRANTS**

Defendant's Motion for Judgment on the Pleadings [Docket 21], **AFFIRMS** the final decision of

the Commissioner, and **DISMISSES** this action from the Court's docket.

## I. LEGAL STANDARD

The Court's review in this case is limited to determining whether the factual findings of the

Commissioner—as set forth in the decision of his designee, Administrative Law Judge Theodore

Burock (ALJ)—are supported by substantial evidence and were reached through application of the

correct legal standards.  *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).  The Social

Security Act states that "[t]he findings of the Commissioner of Social Security as to any fact, if

supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).  The Supreme Court

has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting

*Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  Further, substantial evidence

"consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

　　In reviewing the record for substantial evidence, the Court does not re-weigh conflicting

evidence, make determinations as to credibility, or substitute its own judgment for that of the

Commissioner.  *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  Rather, the court must

adopt the Commissioner's findings if there is evidence in support of such findings "to justify a

refusal to direct a verdict were the case before a jury."  *Blalock v. Richardson*, 483 F.2d 773, 776

(4th Cir. 1972).  "Where conflicting evidence allows reasonable minds to differ as to whether a

claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the

[Commissioner's] designate, the ALJ)."  *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987).  Thus,

even if the Court would have reached a different decision, it must nonetheless defer to the

conclusions of the ALJ if such conclusions are bolstered by substantial evidence and were reached

through a correct application of relevant law.  *See Coffman*, 829 F.2d at 517.

## II. PLAINTIFF'S OBJECTIONS

　　Plaintiff raises four objections to the PF&R.  Each properly raised objection will be afforded

de novo review.

### A. *First Objection: Magistrate Judge's Review of Evidence*

Plaintiff's first objection states, in its entirety:

The plaintiff contends that the U.S. Magistrate erred in his review of the ALJ's
Decision of February 24, 2006, with regard to his identification of the claimant's
severe impairments by conducting an incomplete selective and, in part, de novo
review of the medical evidence.  Contrary to the Magistrate's conclusion as to which

of the claimant's impairments are "severe" for purposes of her claims for Title II and Title XVI Benefits, the plaintiff contends that the medical evidence provides substantial evidence for a finding of severity for Ms. McPherson's left-sided weakness, imbalance, headaches, low back pain, bilateral foot pain, obesity, bladder problems, memory, concentration problems, in addition to those severe impairments identified by the Administrative Law Judge in his Decision of February 24, 2006.

(Pl.'s Objs. Prop. Findings & Recom U.S. Magistrate R. Clarke VanDervort Filed Aug. 29, 2008 at 2 [hereinafter Objs.]).  Each of the two sentences of this objection raise seemingly disparate issues and will be addressed separately.

On its face, 28 U.S.C. § 636(b)(1)(B) does not require any review, by either the district court or the court of appeals, of any issue that has not been made the subject of an objection.  *See Thomas*, 474 U.S. at 149; *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983).   When a party does make objections, but these objections are so general or conclusory that they fail to direct the district court to any specific error by the magistrate judge, de novo review is unnecessary.  *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982); *Howard's Yellow Cabs, Inc. v. United States*, 987 F. Supp. 469, 474 (W.D.N.C. 1997).  A litigant who makes only vague objections to the magistrate judge's findings prevents the district court from focusing on disputed issues and thus renders the initial referral to the magistrate judge useless.  *Howard's Yellow Cabs*, 987 F. Supp. at 474.  A general objection does not meet the requirements of 28 U.S.C. § 636(b)(1), and failure to file a specific objection constitutes a waiver of the right to de novo review.  *Id*. (citing *Mercado v. Perez Vega*, 853 F. Supp. 42, 44 (D.P.R.1993)).

Neither of the two sentences of Plaintiff's first objection calls the Court's attention to any specific error by the magistrate judge.  The first sentence purports to object to the thoroughness of the magistrate judge's review and to the standard of review applied, stating that a de novo standard was applied.  Plaintiff does not, however, identify any specific portion of the PF&R in which

4

Magistrate Judge VanDervort reviewed the record selectively or applied a de novo standard. This is precisely the type of vague and conclusory objection contemplated by *Orpiano* and *Howard's Yellow Cabs, Inc.* that does not merit review by this Court.

The second sentence of Plaintiff's first objection is similarly general and conclusory. It alleges that the magistrate judge failed to recognize that the ALJ's list of severe impairments was underinclusive because there is substantial evidence to support Plaintiff's claims. Plaintiff makes this assertion baldly, without a scintilla of support or argument. In addition to the fact that the details of this allegation are properly set forth in Plaintiff's second objection, the first objection misstates the applicable standard of review. Under the deferential standard mandated by 42 U.S.C. § 405(g), the findings of the Commissioner are not be disturbed if there is substantial evidence in the record to support those findings. It is not appropriate for this Court to weigh the evidence de novo. There may be, as Plaintiff asserts, "substantial evidence for a finding of severity" with regard to Plaintiff's left-sided weakness, imbalance, and headaches. (Objs. 2.) However, the inquiry is not whether Plaintiff's position enjoys the support of substantial evidence; the question is whether the ALJ's decision is supported by substantial evidence.

The Court **FINDS** that Plaintiff's first objection is general and conclusory and that de novo review of the issues raised is not warranted. Therefore, it is **OVERRULED**.

B. *Second Objection: List of Severe Impairments*

Plaintiff's second objection argues that the magistrate judge erred by concluding that the ALJ's identification of severe impairments was supported by substantial evidence. The ALJ found the following severe impairments: cervical disc disease, carpal tunnel syndrome, depression, anxiety, visual impairment, and porphyria. (Tr. 26.) Plaintiff contends that the ALJ failed to include (i) low

5

back pain, radiculopathy of the legs, and foot pain; (ii) obesity; (iii) urinary incontinence; and (iv) memory and concentration deficiencies.

The assessment of whether a claimant has severe impairments is the second step of the sequential five-step analysis of disability claims provided for in 20 C.F.R. §§ 404.1520, 416.920. Severe impairments are impairments which, singly or in combination, "significantly limit[] [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c); 404.920(c). "Basic work activities" include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing and speaking; (3) understanding carrying out and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. § 404.1521(b).  "An impairment can be considered 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work." *Evans v. Hecker*, 734 F.2d 1012, 1015 (4th Cir. 1984) (emphasis omitted).

### 1. Low Back Pain, Radiculopathy of the Legs, and Foot Pain

The ALJ did not find that Plaintiff's claimed low back pain, radiculopathy of the legs, and foot pain constituted severe impairments.  Plaintiff objects to this finding, arguing that the objective medical evidence indicates that these symptoms impaired her ability to engage in basic work activities to the extent that they are severe impairments within the meaning of 20 C.F.R. §§ 404.1520(c), 404.1521(b)(1)–(6), 416.920(c), and 416.921(b)(1)–(6).  In support of this contention, Plaintiff cites several medical reports in the record.

6

First, Plaintiff summarizes Dr. Robert Crow's May 17, 2004, diagnosis that Plaintiff suffered, in Plaintiff's words, "neck and bilateral arm pain but also low back pain radiating into her legs, causing her to be *unsteady* and *unable to heel-to-toe walk*." (Objs. 4 (emphasis in original).) Dr. Crow diagnosed Plaintiff with back pain, neck pain, dysesthesia, and cervical spondylosis. (Tr. 412.) A review of Dr. Crow's report reveals that he notes that her "[g]ait is very unsteady, she is unable to heel-toe walk." (Tr. 410.) It does not appear that he attributes her walking problems to pain,[1] although he does state that "[c]oordination of patient shows difficulty ambulating." (*Id*. 411.) In his evaluation of Plaintiff's limbs, Dr. Crow found that she had normal range of motion, muscle tone and strength, and straight leg tests. Dr. Crow also noted that Plaintiff's cervical MRI did not indicate any pathology that was responsible for her reported symptoms. (*Id*. 412.)

Plaintiff calls the Court's attention to the Dr. Eugene Evans' disability determination evaluation. (See id. 207–12.) Plaintiff asserts, "Dr. Evans found the claimant's work-related activities to be *limited* to light or moderate duty *because of her low back pain and bilateral leg weakness*." (Objs. 4. (emphasis in original).) Plaintiff's reading of Dr. Evans' report is overly generous to her cause. Dr. Evans noted that Plaintiff walked with a limp, "maybe due to pain in her left heel," and the "some pain" in her back in response to palpitations. (Tr. 208.) She had a normal range of motion, ability to squat and rise, and muscle strength. He then concluded, "It appeared that [Plaintiff] probably would be able to do certain work-related activities such as sitting, standing, walking, lifting, carrying, handling objects, hearing, speaking, and traveling at least on a light to

---

[1] It must be noted, however, that several lines of Dr. Crow's report are illegible in the Transcript.

moderate duty basis." (Tr. 209.)  The report does not make an express causal connection between her alleged pain and weakness and the conclusion that her work-related activities may be limited.

Plaintiff likewise states that the magistrate judge ignored the findings of Dr. Alamelu Muragappan.  According to Plaintiff, Dr. Maragappan "acknowledg[ed] the plaintiff to suffer from low back pain, *foot drop*, and the INABILITY [sic] to tandem walk." (Objs. 4 (emphasis in original).)  This is significant, Plaintiff asserts, because her "ability to do basic work activities . . . by definition, includes the ability to walk." (*Id*.)  Plaintiff mischaracterizes Dr. Maragappan's reports.  Although Dr. Maragappan notes Plaintiff's inability to tandem walk (i.e. walking heel to toe in a straight line), he describes her walking gait as "normal." (Tr. 256.)  Her tone and strength in all four limbs was satisfactory.  (*Id*. 259.)  Regarding her claims of foot drop, Dr. Maragappan says, "although she says her foot will drop down her symptoms are not quite as specific as a footdrop." (*Id*. 260.)

Lastly, Plaintiff refers to Dr. John Collins, who "noted the claimant's left-sided weakness and ataxic gait." (Obj. 4.)  An ataxic gait indicates "an inability to coordinate muscle activity during a voluntary movement."  Stedman's Medical Dictionary (28th ed. 2006).  Dr. Collins ordered an MRI to ascertain the source of Plaintiff's alleged symptoms.  The MRI showed no abnormalities. (Tr. 348.)  Dr. Collins stated that her symptoms may be caused by her visual disturbance.  (*Id*. 347.)

Upon reviewing the record and the ALJ's discussion of Plaintiff's impairments (*id*. 26–29), the Court **FINDS** that there is substantial evidence to support the Commissioner's finding that Plaintiff's alleged low back pain, radiculopathy of the legs, and foot pain are not severe impairments.

### 2.  Obesity

Plaintiff objects to the ALJ's omission of obesity from his finding of severe impairments. The ALJ took notice of the impairment but failed to find that it significantly interfered with her ability to engage in work activities.  Plaintiff charges that neither the ALJ nor the magistrate judge gave Plaintiff's obesity claims proper consideration as set forth in Social Security Ruling (SSR) 02-1p, titled *Policy Interpretation Ruling Titles II and XVI: Evaluation of Obesity*.

According to SSR 02-1p, obesity is a "chronic disease characterized by excessive accumulation of body fat." SSR 02-1p ¶ 1.  It is measured by with a body mass index (BMI), which is a ratio of person's weight to height.  *Id*.  A BMI of 30 or greater is considered obese.  Although obesity alone may warrant a finding of severe impairment, it is often a "risk factor" that increases the likelihood of other impairments.  *Id*. ¶ 2.  Like any other impairment, obesity will only be considered severe if it significantly limits an individual's ability to engage in basic work activities. *Id*. ¶ 6.  To assess the severity of an obesity impairment, the regulations give the following guidance:

> There is no specific level of weight or BMI that equates with a "severe" or a "not severe" impairment.  Neither do descriptive terms for levels of obesity (e.g., "severe," "extreme," or "morbid" obesity) establish whether obesity is or is not a "severe" impairment for disability program purposes. Rather, [the Commissioner] will do an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe.

*Id.*

Plaintiff's height is 5' 4" and her weight is approximately 200 pounds.  This corresponds with a BMI that was determined at various times to be 35 or 36 (*E.g*., Tr. 256, 314, 323.)  These BMI scores place her within the second of three levels of obesity.  SSR 02-1p ¶ 1.  Plaintiff calls the Court's attention to the report of Dr. S.K. Shammaa, who noted that Plaintiff was "[g]rossly obese"

and had "palpable tenderness to heels of both feet." (Tr. 319.)  Dr. Shammaa also advised Plaintiff

to exercise and try to lose weight. (*Id*. 317.)

At a hearing on November 3, 2005, the ALJ inquired into the source of Plaintiff's weight

problems.  Plaintiff attributed it to "[n]ot being as active as I used to be." (*Id*. 444.)  This short

colloquy indicates that the ALJ was aware of Plaintiff's obesity.  It is notable that Plaintiff's weight

and alleged consequent impairment was not raised by Plaintiff's counsel at the hearing.  Thus, aside

from the single question from the ALJ, the issue of Plaintiff's obesity was not developed on the

record.

The only evidence of Plaintiff's obesity in the objective medical evidence is the recording

of her BMI by various doctors and Dr. Shammaa's isolated statement.  There is no medical evidence

on the record suggesting that Plaintiff's obesity interferes with her ability to engage in work

activities or that it is the cause of any of Plaintiff's alleged symptoms.  Dr. Shammaa's singular

description of Plaintiff as "grossly obese," without more, is not evidence that Plaintiff's obesity is

a severe impairment.  SSR 02-1p ¶ 6.  Accordingly, the Court **FINDS** that there is substantial

evidence to support the Commissioner's omission of obesity from the list of Plaintiff's severe

impairments.

### 3.  Frequent Urination and Incontinence

Plaintiff states that the ALJ erred by not finding that Plaintiff's bladder problems constituted

a severe impairment.  Plaintiff was diagnosed with an overactive bladder based on her representation

to her doctors.  (Tr. 246, 260, 319.)  She was prescribed Detrol LA (*id*. 246) and used incontinence

products to control this problem (*id*. 260, 460).

In support of her argument that her bladder impairment is severe, Plaintiff primarily relies on a diagnosis by Dr. Shammaa on December 19, 2005.  Dr. Shammaa noted that Plaintiff "suffers from stress incontinence, causing urinary frequency which is aggravated by lifting, bending or stooping."  (*Id*. 415.)  Dr. Shammaa proceeded to draft a letter in which he stated,

> I feel that she would not be able to work at a job secondary to the frequency/urgency of urination which would interfere with a job, regardless of sedentary or not.  She states she has difficulty with lifting secondary to being able to control the leakage of her bladder.  We will need further evaluation regarding her bladder.

(*Id*. 416.)

The ALJ misstates the record in his decision.  He states that Plaintiff complained of bladder problems in 2001 and sought no further treatment until December 2005.  (*Id.* 31.)  Based on this observation, he concludes that "if in fact this was a problem of the magnitude which she alleges, the claimant would have undergone further treatment and testing by now."  (*Id*.)  The record reflects, however, that Plaintiff sought medical treatment for bladder problems at other times between 2001 and 2005.  (*See, e.g.*, *id*. 246 (May 2003); 256 (November 2004).)

Notwithstanding the ALJ's error, there is other evidence in the record to support his conclusion that Plaintiff's bladder problem was not a severe impairment.  To the extent that there is evidence of Plaintiff's bladder problems in the medical record, it is the result of plaintiff's self-reporting of symptoms.  Thus, the allegations of severe bladder impairment are not supported by objective medical evidence to the extent and severity alleged by Plaintiff.  *See Hammond v. Apfel*, 5 Fed. Appx. 101, 104 (4th Cir. 2001) (unpublished disposition).  Furthermore, Plaintiff stated that she only wears incontinence products "occasionally," which suggests that her problem is not so frequent or disruptive that it rises to the level of a severe impairment.  (Tr. 260.)  Accordingly, the

Court **FINDS** that there is substantial evidence to support the ALJ's finding that Plaintiff's frequent urination and incontinence problems are not severe impairments.

### 4. Memory and Concentration

The ALJ found that Plaintiff's depression and anxiety were severe impairments. (*Id*. 28.) He did not find that Plaintiff's claims of concentration and memory deficiencies amounted to severe impairments. However, the ALJ took note of Plaintiff's mental impairments—documented and claimed alike—in concluding that Plaintiff would be limited to jobs requiring more than "simple, routine, repetitive tasks." (*Id*. 31.) Notwithstanding the ALJ's findings, Plaintiff objects to the absence of concentration and memory deficiencies from the list of severe impairments.

Like physical impairments, mental impairments are considered severe only if they "significantly limit[] . . . physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Assessing the degree of a claimant's limitation is a "complex and highly individualized process" which must take into account all relevant evidence bearing on the claimant's mental condition. *Id*. § 404.1520a(c)(1). In this context, relevant evidence includes "clinical signs and laboratory findings, the effects of [claimant's] symptoms, and how [claimant's] functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication, and other treatment." *Id*. Severity is determined by evaluating the evidence in light of four categories: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. *Id*. § 404.1520a(c)(3); *see also* 20 C.F.R. pt. 404, app. 1, § 12.00(C).

The record contains reports from four psychological and psychiatric experts. Plaintiff highlights portions of each expert's report to demonstrate that Plaintiff's memory and concentration

12

problems are severe impairments.  The parts of the reports relied on by Plaintiff are highly selective,

however.  A review of each expert's report reveals that there is evidence to support a finding a mild

memory and concentration impairments.

Psychologist Sunny S. Bell examined Plaintiff on January 1, 2005. (Tr. 282.)  Plaintiff

emphasizes Bell's prognosis, which was "poor." (*Id.* 285.)  Plaintiff also refers to her self-reported

symptoms which were reflected in Bell's report.  These symptoms included decreased memory and

concentration and an inability to engage housework, cooking, shopping, or past hobbies.  None of

these claimed symptoms was the subject of an opinion or assessment by Bell, and therefore cannot

be considered objective evidence of a severe limitation on Plaintiff's daily activities.  Bell's

observations of Plaintiff during the examination led Bell to conclude that Plaintiff's social

functioning was only "mildly deficient." (*Id.*)  Regarding Plaintiff's memory, Bell noted that her

immediate memory was normal, recent memory was moderately deficient, and remote memory was

mildly deficient. (*Id.* 284.) Although Plaintiff's concentration level was "markedly deficient" based

on her difficulty performing serial threes, her persistence and pace were normal. (*Id.* 284–86.) There

is no mention of decompensation in the report.

The record reflects that Psychiatrist Rhonda L. Hamm treated Plaintiff from approximately

October 2004 to October 2005.  On November 11, 2005, after nearly three weeks of treatment, Dr.

Hamm prepared a psychiatric evaluation of Plaintiff.  Dr. Hamm reported the following:

> [Plaintiff] is alert and oriented on all spheres.  Her affect is slightly flattened and her
> mood is slightly depressed.  However, this is improved from her initial visit.  She has
> no suicidal or homicidal ideation.  Her speech is fluent and goal directed.  Her
> thoughts are clear. . . . She attends well to conversation.  Her memory in both the
> long and short term appears to be intact.

13

(*Id.* 295.)  Despite the apparently normal findings, Dr. Hamm assigned Plaintiff a global assessment

functioning (GAF) score of 35.  (*Id.*)  This level indicates:

> Some impairment in reality testing or communication (e.g., speech is at times, illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgement, thinking or mood (e.g., depressed person avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school).

Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed., text revision 2000).  Based on

Dr. Hamm's report read as a whole, it is likely that the low GAF score is attributable Plaintiff's

diagnoses of chronic post traumatic stress disorder and mood disorder, rather than to her claimed

memory and concentration issues.  Additionally, Dr. Hamm's treatment notes indicate that Plaintiff's

memory level throughout the course of treatment was usually "normal," with only a few instances

where "short term deficits" were noted.  (Tr 289–98, 366–90.)  With a single exception, (*id.* 297),

Plaintiff's insight and judgment were rated as normal at every evaluation, (*id.* 289–98, 366–90).

Plaintiff was evaluated by psychologist Dr. Debra L. Lilly on February 19, 2005.  Dr. Lilly

diagnosed Plaintiff with affective disorders which would impair Plaintiff's functioning on a short-

term basis only.  (*Id.* 299.)  Dr. Lilly could find "no identified neurological disorder to account for

memory or concentration issues" (*id.* 311) and concluded that Plaintiff's impairment was only mild,

(*id.* 309).

Plaintiff faults Magistrate Judge VanDervort for not discussing the report of psychiatrist Dr.

Khalid Hasan in his PF&R.  Dr. Hasan's report was filed after the ALJ's decision and was made part

of the record by the Social Security Administration Appeals Council.  (*Id.* 10.)  Dr. Hasan evaluated

Plaintiff on four occasions in 2006: April 3, April 17, May 15, and June 12.  According to Plaintiff,

Dr. Hasan's conclusions support Plaintiff's contention that there is sufficient evidence to

demonstrate a severe memory or concentration impairment.  At the April 3 evaluation, however, Dr.

Hassan described Plaintiff's mental status as follows:

> The patient was neat, tidy, and cooperative, talked clearly, audibly, and rationally.
> Speech was clear, lacked spontaneity.  Affect was of some dysphoria. . . . The patient
> showed no evidence of psychosis or thought disorder was elicited.  Cognition was
> intact. . . . No bizarre thought processes, tangential or circumstantial thinking was
> elicited.  Abstract thinking was appropriate. . . . No clinical evidence of organicity,
> psychosis or thought disorder was elicited. . . . Insight, judgment and problem
> solving fair.

(*Id.* 13.)  Perhaps most damaging to Plaintiff's arguments about memory and concentration, Dr.

Hasan notes that Plaintiff was able to do serial sevens, which is one of the Social Security

Administration's recommended tests for concentration.  *See* 20 C.F.R. pt. 404 app. 1 § 12.00(C)(3).

Dr. Hasan diagnosed Plaintiff with major depression and adjustment disorder.  (Tr. 13.)  He assessed

her GAF at 45–50—a significant improvement from Dr. Hamm's earlier assessment.  Although Dr.

Hasan rated Plaintiff's occupational abilities to follow work rules, use judgment, maintain

attention/concentration as "poor," he found her abilities in a great many other areas to be "fair."  (*Id.*

17–18.)  Furthermore, Dr. Hasan found that Plaintiff's ability to understand, remember, and carry

out simple job instructions was "good."  (*Id.* 18.)

After reviewing the record, the Court **FINDS** that there is substantial evidence to support the

ALJ's finding that Plaintiff's concentration and memory problems are not severe impairments.

Because the ALJ's list of substantial impairments is supported by substantial evidence,

Plaintiff's second objection is **OVERRULED**.

C.  *Third Objection: Residual Functional Capacity*

Plaintiff objects to the ALJ's determination of her residual functional capacity (RFC).  The

ALJ found that Plaintiff

has the residual functional capacity to perform simple routine, repetitive tasks at the limited light exertional level.  Specifically, she can lift and carry 20 pounds occasionally and 10 pounds frequently, can stand/walk for 6 hours in an 8 hour day and can sit for 6 hours in an 8 hour day.  She can further perform jobs as long as they do not require working outdoors, concentrated and extensive exposure to sunlight, concentrated exposure to extreme cold and dampness, operating a motor vehicle or dangerous machinery and exposure to dangerous situations.

(Tr. 29.)  Plaintiff contends that the ALJ erred in three respects: (1) the ALJ improperly weighed the objective medical evidence in concluding that Plaintiff could perform light duty work; (2) the ALJ failed to account for Plaintiff's mental impairments; and (3) the ALJ did not properly evaluate Plaintiff's pain.

RFC is a determination of a claimant's capabilities notwithstanding her impairments, which occurs at step four of the five-step sequential evaluation of disability claims.  *See* 20 C.F.R. § 416.945(a)(1); *see also* SSR 96-8p ("RFC represents the most that an individual can do despite his or her limitations or restrictions.").  RFC takes into account both physical and mental impairments that may limit the claimant's work-related abilities.  *See id.* § 416.945(b)–(c).  All relevant evidence, medical, observational, and subjective, will be considered.  *See id.* § 416.945(a)(3).

Though the ALJ considers each of the medical opinions, the determination of a claimant's RFC is ultimately the province of the ALJ as the representative of the Commissioner. 20 C.F.R. § 404.1527(e)(2); *see also Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  The reviewing court's sole responsibility is to determine whether the ALJ's determination of the claimant's RFC is rational and based on substantial evidence.  *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

1.  Weight of Medical Testimony

Plaintiff maintains that the ALJ improperly discredited the medical reports of Dr. S.K. Shammaa and Plaintiff's treating physician, Dr. Pamela Butcher, while improperly crediting the reports of Dr. Eugene Evans, Dr. Rogelio T. Lim, and Dr. R.L. Go.  Each of these doctors' reports will be reviewed to determine if they contain substantial evidence to support the ALJ's RFC findings.

When deciding the weight to give each medical opinion, unless the ALJ gives a treating source's opinion controlling weight, the ALJ takes into account the following factors: (1) whether the source has examined the claimant and the length and frequency of the examinations; (2) the nature and extent of relationship with a treating physician; (3) supportability; (4) consistency; (5) specialization; and (6) various other factors.  20 C.F.R. § 404.1527.   Generally, more weight is given to examining sources than to sources who do not examine.  20 C.F.R. § 404.1527(d)(1. Similarly, more weight is given to treating sources than to examining sources.  20 C.F.R. § 404.1527(d)(2). If "the treating source's opinion is [not] given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for [the Social Security Administration]."  20 C.F.R. § 404.1527(f)(2)(ii).

Plaintiff contends that the ALJ should have given more weight to a letter written by Dr. Shammaa in which he opined that Plaintiff "would not be able to work at a job secondary to the frequency/urgency of urination which would interfere with a job, regardless of sedentary or not." (Tr. 416.)  The ALJ discredited Dr. Shammaa's conclusion because it was inconsistent with other

17

objective evidence and appeared to be based primarily on Plaintiff's subjective complaints. (*Id.* 31.) *See also supra* Part II.B.3 (discussing Dr. Shammaa's findings).

Dr. Shammaa's opinions should be given due deference based on the length of time he treated Plaintiff, *see* 20 C.F.R. § 404.1527, but his opinions are not dispositive. Among the numerous evaluations of Plaintiff by Dr. Shammaa reflected in the record, only once did she complain about bladder problems. (Tr. 319.) This deficiency in the record is what lead the ALJ to remark that "if in fact this was a problem of the magnitude which she alleges, the [Plaintiff] would have undergone further treatment and testing by now."[2] (*Id.* 31.) Furthermore, Dr. Shammaa's letter does not indicate that his opinion regarding Plaintiff's inability to engage in work activities is conclusive. In the letter, Dr. Shammaa states, "I am referring [Plaintiff] to Dr. Meriwether, urologist in Lewisburg in the near future for evaluation. . . . *She states* she has difficulty with lifting secondary to being unable to control the leakage of her bladder. *We will need further evaluation regarding her bladder*." (*Id.* 416 (emphasis added).) This suggests that Dr. Shammaa's opinion was of a preliminary nature based on Plaintiff's subjective representations. Accordingly, it is evident that the ALJ's decision to discount Dr. Shammaa's letter is supported by substantial evidence.

Plaintiff also faults the ALJ for not giving greater weight to Dr. Butcher's report dated March 3, 2004. In that report, Dr. Butcher opined that Plaintiff was unable to work for at least a six-month period "until further neurological work up." (*Id.* 408.) Plaintiff was specifically cautioned to avoid climbing and lifting pending the evaluation. (*Id.*) Plaintiff argues that this

---

[2]  If there were other instances where Plaintiff received specialist evaluation or treatment or for incontinence problems, they are not reflected in the record. The burden of producing these records, if they exist, rests on Plaintiff. *See Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); 42 U.S.C. § 423(d)(5)(A). The Court does note, contrary to the assertion of the ALJ, that the Plaintiff did mention this complaint to other physicians. *See supra* Part II.B.3.

statement should be construed as evidence that Plaintiff was physically unable to work.  Dr. Butcher's statement should not, however, be given a meaning other than what it plainly says—Plaintiff was not to work until she had had further tests to determine whether she had neurological problems.  The ALJ properly refused to credit Dr. Butcher's statement as evidence that Plaintiff suffered documented impairment.  The ALJ's finding is buttressed by the fact that "further neurological work up" mentioned in the letter was completed and no neurological abnormalities were discovered.  (*See, e.g., id.* 412 (results of evaluation conducted one month after Dr. Butcher's report).)

Plaintiff contends that the ALJ should not have credited the opinion of Dr. Evans.  Dr. Evans examined Plaintiff on June 27, 2004, and concluded that she would be able to do work-related activities on a light or moderate duty basis.  (*Id.* 209.)  The ALJ found Dr. Evans' report to be credible, primarily because it was consistent with the overall record.  (*Id.* 31.)  Dr. Evans noted that Plaintiff could walk unassisted, although with a limp favoring her left leg, and squat and arise with some difficulty.  (*Id.* 208.)  She also displayed a normal range of motion, normal muscle strength, and normal behavior.  (*Id.* 208–09.)  As the ALJ noted, these findings were consistent with the bulk of the medical evidence.  *See supra* Part II.B.1.  Thus, the ALJ's decision to credit Dr. Evans' findings is supported by substantial evidence.

Lastly, Plaintiff asserts that "neither Dr. Lim's nor Dr. Go's reports can be given significant weight."  (Objs. 12.)  The Court does not consider this to be a properly raised objection.  The ALJ does not cite Dr. Lim or Dr. Go's reports as the basis for any of his findings.  The only mention of their reports in the ALJ's decision is the following statement: "As required by [SSR] 96-6p, the

undersigned has also considered the opinions of [Dr. Lim and Dr. Go], who opined that the claimant is capable of performing work at the medium exertional level."  (Tr. 31–32.)

The Court **FINDS** that the ALJ afforded proper weight to the various medical reports in the record.

### 2.  Impact of Depression and Anxiety

Plaintiff objects to the ALJ's finding that her depression and anxiety were not debilitating. The ALJ considered Plaintiff's mental impairments, including her concentration and memory problems, and concluded that Plaintiff could not perform "jobs that require performing more than simple, routine, repetitive tasks."  (*Id.* 31.)

Assessing the effect of mental impairments on RFC requires a much more precise analysis of a claimant's abilities than is necessary when determining the degree of the impairments' severity at step two of the sequential evaluation.  The regulations explain:

> The psychiatric review technique described in 20 CFR 404.1520a and 416.920a and summarized on the Psychiatric Review Technique Form (PRTF) requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments [20 C.F.R. pt. 404, app. 1, § 12.00], and summarized on the PRTF.

SSR 96-8p.

Plaintiff cites the reports of Dr. Rhonda L. Hamm and Dr. Khalid Hasan as supporting her claim that she is debilitated by her depression and anxiety.[3]  In Dr. Hamm's report, Plaintiff points to her GAF score of 35 as "indicative of a mental impairment which may significantly impede useful functioning." (Obj. 13 (citing Tr. 295).)  As discussed above, a GAF score of 35 indicates a degree of impairment, but it does not specify the nature of the impairment or specific limitations.  Thus, Plaintiff's GAF score may be relevant in a more generalized assessment of the severity of mental impairment at step two, but, without more, it is not particularly helpful in the RFC context.  Other portions of Dr. Hamm's report are more instructive of Plaintiff's work-related capabilities.  For example, Dr. Hamm noted that Plaintiff was on time for the evaluation, was alert and oriented, was not suicidal, was only "slightly depressed," and had shown psychological improvement.  (Tr. 295.)

Plaintiff selectively highlights portions of Dr. Hasan's report of June 26, 2006, which purportedly indicate that Plaintiff's mental impairments are debilitating.  Dr. Hasan's report lists various work-related abilities and scores each on a range from "None" (i.e. "No useful ability to function in this area") to "Unlimited" (i.e. "Ability to function in this area is not limited by a mental impairment."). (*Id.* 17.)  Plaintiff's scores ranged from "Poor" to "Good." (*Id.* 17–18.)  "Good" means that ability is "more than satisfactory" and "Poor" means that the ability is "seriously limited but not precluded." (*Id.* 17.)  In areas relevant to the ALJ's conclusion that Plaintiff's mental RFC permits "simple, routine, repetitive tasks," Plaintiff scored either "Good" or "Fair."  For instance, her abilities to interact with a supervisor and function independently are "Fair." (*Id.* 17.) Her ability to "[u]nderstand, remember and carry out simple job instructions" was "Good." (*Id.* 18.) Although her abilities to follow work rules, use judgment, maintain attention, carry out *complex* job

---

[3] These doctors' reports were discussed previously.  *See supra* Part II.B.1.

21

instructions, and be socially reliable are "Poor," these abilities are generally not required for simple, routine, repetitive tasks. Moreover, a "Poor" listing does not mean that Plaintiff does not have these abilities; it simply means that they are limited. Notably, Plaintiff did not receive a "None" for any work-related ability.

Accordingly, the Court **FINDS** that there is substantial evidence in the record to support the ALJ's conclusion that Plaintiff's depression and anxiety were not debilitating impairments.

3. Pain Assessment

Plaintiff states that the ALJ conducted an improper assessment of Plaintiff's claims that debilitating pain and other symptoms limit her ability to engage in substantial gainful activity. Plaintiff's objection arises from the following statement in the ALJ's decision:

> After considering the claimant's testimony and statements, in light of the medical evidence of record, the undersigned finds that the claimant is not entirely credible. Specifically, while the claimant alleges that she suffers from debilitating pain, which renders her unable to walk, stand or sit for prolonged periods of time, the objective medical evidence of record reveals that the claimant does not have conditions, which could reasonably be expected to cause such limitations. . . . Nonetheless, giving the claimant the benefit of the doubt, the undersigned finds that given her mild cervical disc disease and mild carpal tunnel syndrome, she is limited to work at the light exertional level.

(TR at 30.) Relying on this excerpt, Plaintiff reasons that the ALJ improperly "first *attacked* the claimant's credibility rather than [] make a finding regarding whether the objective medical evidence established the existence of anatomical, physiological or psychological abnormalities which could reasonably cause the claimant to have the pain or other non-exertional limitations alleged" as required by *Craig v. Chater*, 76 F.3d 585 (4th Cir. 1996). (Objs. 15.(emphasis in original)) As is discussed below, the ALJ applied the proper legal standard to discount the weight of Plaintiff's

subjective claims to the extent that they were inconsistent with the objective evidence and his conclusions are supported by substantial evidence.

A two-step analysis must be followed when a claimant raises the issue of pain and related symptoms: 1) does objective medical evidence show the existence of a medical impairment that reasonably could be expected to produce pain or other alleged symptoms; and, if yes, 2) is the pain so continuous and/or severe that it prevents the claimant from working? *See* SSR 96-7p; 40 C.F.R. §§ 416.929(a), 404.1529(a); *see also Craig*, 76 F.3d at 593–94. For the second prong, the claimant is "entitled to rely exclusively on subjective evidence." *Hines v. Barnhart*, 453 F.3d 559, 565 (4th Cir. 2006); *see also Fulcher v. Astrue*, 554 F. Supp. 2d 606, 610 (E.D.N.C. 2008) ("[P]ain alone can be disabling. So long as a condition exists that would cause the alleged pain, there need not be objective medical evidence of the intensity of such pain, or even evidence of the pain existing at all."). This does not mean, however, that a claimant's subjective claims of pain and other symptoms must be accepted without question. Where the claimant's statements about pain and other symptoms are not "substantiated by objective medical evidence," the ALJ must make a credibility assessment of claimant. SSR 96-7p.

In assessing the credibility of a claimant, the ALJ is entitled to rely on all the evidence on the record, including the claimant's testimony. *Id.* Although objective medical evidence is not required to substantiate a claimant's subjective statements regarding pain, such evidence is relevant to the extent that it is inconsistent with the claimant's subjective claims and gives reasons to doubt those claims. Further, because the ALJ had the opportunity to personally observe the claimant and other witnesses, his determination of credibility is to be afforded great weight. *See Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).

In the instant action, a review of the ALJ's decision reveals that he properly applied the two-step pain analysis called for in SSR 96-7p and *Craig*.[4]  As Plaintiff points out, the text of ALJ's decision contains a sentence discounting Plaintiff's credibility with regard to pain and related symptoms prior to his discussion of predicate medical conditions that could reasonably be expected to produce pain.  The ordering of the discussion does not indicate that the ALJ "improperly place[d] step two of the *Craig* criteria before step one." (Ojbs. 16.)  On the contrary, this appears to be little more than a drafting choice; the ALJ stated his conclusion first and then proceeded to explain how he arrived at that conclusion.

The ALJ's decision was supported by substantial evidence.  At step one of the analysis, the ALJ found that the objective medical evidence did not reveal conditions that would reasonably be expected to produce Plaintiff's alleged symptoms.  He noted that although Plaintiff had cervical disc disease and carpal tunnel syndrome, these conditions were "mild." (Tr. 30; *see also* 264.)  Further, the objective evidence does not suggest that either of these conditions is associated with radicular or peripheral neuropathy in her lower extremities—i.e. neither has been shown to be causing pain in her legs. (*Id*. 198, 412.)

Upon finding that Plaintiff did not have a documented medical condition that could be responsible for her claimed symptoms, the ALJ did not have to proceed to step two.  *See Craig*, 76 F.3d at 595 ("It is only *after* a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain . . . must be evaluated").  Thus, the ALJ did not have

---

[4]  Contrary to Plaintiff's assertion, it is immaterial that the ALJ's decision does not cite *Craig*.  The pertinent regulations require the ALJ to follow the correct procedures; they do not require the ALJ to cite to any particular case.

to opine on Plaintiff's credibility.  The ALJ's decision to do a more detailed analysis of Plaintiff's claims than was required did not prejudice Plaintiff in any way, and is not grounds for remand.

Accordingly, the Court **FINDS** that the ALJ applied the proper legal standard in conducting his analysis of Plaintiff's claims of pain and other non-exertional symptoms and that there is substantial evidence in the record to support his conclusions on this matter.

For the reasons stated above, Plaintiff's third objection is **OVERRULED** in its entirety.

D.  *Fourth Objection: Vocational Expert's Assessment*

In her fourth objection, Plaintiff argues that the ALJ's use of the vocational expert was improper in two respects.  First, the ALJ's hypothetical questions to the VE at the hearing on November 3, 2005, did not include all of Plaintiff's limitations.  Second, the ALJ's decision failed to account for Plaintiff's counsel's question to the VE.

A VE's testimony is relevant to steps four and five of the sequential disability analysis—whether the claimant can perform her past relevant work or other kinds of work.  VEs serve the function of identifying jobs in the national economy that could be performed by the claimant notwithstanding the claimant's impairments.  *See Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989).  In order to for the VE to accurately identify jobs available to the claimant, the ALJ must present hypothetical questions to the VE that are "based on medical assumptions supported by substantial evidence in the record that reflect[] each of the claimant's limitations."  *Osenbrock v. Apfel*, 240 F.3d 1157, 1163 (9th Cir. 2001); *see also Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987).  Although the ALJ's hypothetical questions must include severe limitations, it may omit limitations that are not severe.  *See Benenate v. Schweiker*, 719 F.2d 291, 292 (8th Cir. 1983).

Obviously, the hypothetical questions presented to the VE are highly dependent on the ALJ's findings of severe impairments.  The ALJ is under no duty to present the VE with hypothetical questions that include Plaintiff's claimed impairments if the ALJ has found those impairments to be not severe or not credible.  In this action, Plaintiff faults the ALJ for not questioning the VE about the impact of several of Plaintiff's claimed impairments, including visions problems, depression, porphyria, and urinary incontinence.  With regard to the impairments that the ALJ found to be not severe or not credible,[5] the ALJ was not obligated to structure hypothetical questions accounting for these impairments.  Likewise, the ALJ did not have to give weight to Plaintiff's counsel's hypothetical questions to the VE to the extent that they were based on non-severe or non-credible limitations.  With regard to Plaintiff's acknowledged severe impairments, the ALJ's questions properly presented her limitations.  The ALJ's first hypothetical stated:

> [A]ssume an individual the claimant's age, education, work experience, who has a residual functional capacity for light work.  Non-exertionally, the individual's limited to routine, repetitive tasks.  Non-exertional restrictions include no outdoor work involving extensive and concentrated exposure to sunlight.  No concentrated exposure to extreme cold or dampness.  No operation of motor vehicles or exposure to dangerous situations, such as unprotected heights or dangerous equipment.

(Tr. 470.)   It is not necessary that the hypothetical mention the underlying diagnoses, *cf. Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005) (approving similarly styled hypothetical); what is important is that the VE is presented with an accurate picture of the Plaintiff's limitations.[6]   The

---

[5]  As discussed above, the ALJ's listing of severe impairments is supported by substantial evidence. *See supra* Part II.B.

[6]  The ALJ found that

> claimant's cervical disc disease, carpal tunnel syndrome, depression, anxiety, visual impairment and porphyria are severe impairments as the limit the claimant's

(continued...)

ALJ properly stated Plaintiff's severe impairments and limitations to the VE.  Accordingly, the Court **FINDS**  that the ALJ's use of the VE was appropriate and Plaintiff's fourth objection is **OVERRULED**.

### III.  CONCLUSION

For the reasons stated above, the Court **ADOPTS** and incorporates herein the PF&R of Magistrate Judge VanDervort.  The Court **DENIES** Plaintiff's Motion for Judgment on the Pleadings [Docket 15], **GRANTS** Defendant's Motion for Judgment on the Pleadings [Docket 21], **AFFIRMS** the final decision of the Commissioner, and **DISMISSES** this action from the Court's docket.  A separate Judgment Order will issue this day.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a certified copy of this Order to Magistrate Judge VanDervort, counsel of record, and any unrepresented party.


ENTER:  March 2, 2009


THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

---

[6](...continued)
      mobility, ability lift and carry heavy objects, her ability to be exposed to sunlight and extreme cold/dampness, her ability to operate a motor vehicle/dangerous machinery and her ability to be exposed to dangerous situations.

(Tr. 29.)